UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNION ELECTRIC COMPANY d/b/a AMERENUE, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | )   Case No. 4:10-CV-1153 (CEJ) ) |
| ENERGY INSURANCE MUTUAL LIMITED, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion to dismiss the complaint for improper venue and/or for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(3) and 12(b)(6). Plaintiff has filed a response in opposition to the motion and the issues are fully briefed.

**I.      Background**

Plaintiff Union Electric Company, doing business as AmerenUE, is a Missouri public utility. On December 14, 2005, the upper reservoir of plaintiff's Taum Sauk hydroelectric plant experienced a sudden catastrophic breach that caused extensive damage to property owned by the State of Missouri and private landowners.

At the time of the incident, plaintiff was covered by an excess general liability indemnity policy from defendant Energy Insurance Mutual Limited (EIM). The policy provides $100 million in coverage, in excess of a $35 million limit.[1]

---

[1]Plaintiff was insured under a primary liability policy purchased from Associated Electric & Gas Insurance Services Limited (AEGIS). The AEGIS policy provided $35 million coverage in excess of a $1 million self-insured retention. The coverage available under the AEGIS policy has been exhausted, triggering coverage under the policy issued by defendant.

The policy includes the following relevant provisions:

(I) <u>Governing Law and Interpretation</u>

In view of the diverse locations of the parties purchasing insurance from the Company and the desirability of unified regulation, the parties agree that the Policy shall be construed and enforced in accordance with and governed by the internal law of the State of New York, except insofar as such law may prohibit payment in respect of punitive damages hereunder.

(J) <u>Dispute Resolution</u>

The Company and the Member Insured mutually acknowledge that the form, terms, and conditions of the Policy have been formulated by representatives of the participating utilities in order to provide insurance coverage which is vital to all participants.  It was desired to have the Company serve as a financially stable and reliable entity, responsive to the coverage needs of its participants, and providing coverage fairly and equitably as to each insured, but taking equally into account fairness and equity as to all insureds as a group.

While every effort has been made to define with clarity and precision the scope of coverage, the Company and the Member Insured mutually acknowledge that situations may arise where the availability of coverage for a Claim under the Policy is disputed.

In light of the foregoing, the Company and the Member Insured agree that:

\* \* \*

(2)(a)   In the event of any dispute between the Insured and the Company as to any matters arising out of or relating to any provision of this Policy, the parties shall attempt to resolve the dispute by use of a mini-trial.  The disputing party shall give the other party written notice of its intent to proceed with a mini-trial. . .

(b)   The mini-trial shall be conducted not more than 120 days after [notice and] shall proceed before a panel composed of a senior executive officer from each party with authority to settle the dispute and one neutral advisor, unless both parties agree to proceed without a neutral advisor. . .

\* \* \*

      (d)      The neutral advisor is not to mediate or effect a compromise of the dispute. The neutral advisor is to issue a nonbinding opinion to the parties . . .

                          * * *

      (f)      If the parties are unable to agree on the ground rules of the mini-trial, either party may make a demand in writing for arbitration upon the other party.

                          * * *

      (3)      Any claim or controversy between the Insured and the Company not settled in accordance with Section (2) above, shall be submitted to arbitration in New York City by three arbitrators . . .

      (4)      To the extent that any claim or controversy between the Insured and the Company hereunder is not subject to arbitration for any reason whatsoever, the United States District Court for the Southern District of New York shall have exclusive jurisdiction thereof.

Section IV(I) and (J).

Plaintiff reached a settlement agreement with the State, pursuant to which it agreed to monetary and in-kind payments totaling $177 million. Some of the claims brought by private property owners have been settled while others remain pending. Plaintiff alleges that it has incurred covered losses of at least $197.5 million and that EIM has provided payment for only $68.7 million. Plaintiff asserts claims of breach of contract and vexatious refusal to pay, pursuant to § 375.256, Mo.Rev.Stat., and seeks a declaration that the arbitration provision is unenforceable.

II.    **DISCUSSION**

Defendant contends that the action should be dismissed because (1) satisfaction of the mini-trial provision is a condition precedent to filing suit and (2) the parties agreed that the U.S. District Court for the Southern District of New York would have exclusive jurisdiction. Defendant also asserts that New York law governs, pursuant to

the choice-of-law provision of the contract, while plaintiff argues that the Court should apply Missouri law.  Because the choice of law does not affect the outcome, the Court declines to reach the issue.

### Agreement to Mediate

Several courts have determined that dismissal of an action is warranted when there has been a failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to litigation.  See, e.g., Tattoo Art, Inc. v. TAT Int'l, LLC, 711 F. Supp.2d 645, 651 (E.D. Va. 2010) (listing cases); Centaur Corp. v. ON Semiconductor Components Industries, LLC, No. 09-CV-2041, 2010 WL 444715, at *3 (S.D. Cal. Feb. 2, 2010); see also Kemiron Atlantic, Inc. v. Aguakem Int'l, Inc., 290 F.3d 1287, 1291 (11th Cir. 2002) (affirming denial of motion to compel arbitration where the parties did not engage in mediation, which was a condition precedent to arbitration).

Plaintiff argues that the mini-trial procedure is unenforceable because the contract does not make the procedure mandatory. The mini-trial provision at issue in this case states: "In the event of any dispute . . . as to any matter arising out of or relating to any provision of this Policy, the parties shall attempt to resolve the dispute by use of a mini-trial." § IV(J)(2)(a) (emphasis added).  Plaintiff does not dispute that the use of "shall" in this section indicates that the mini-trial procedure is mandatory. See, e.g., Tattoo Art, Inc., 711 F. Supp.2d at 649-50 (plain language of provision "unambiguously shows" the parties elected not to be subject to court jurisdiction until after mediation is attempted).  Rather, plaintiff cites Section IV(J)(2)(f), which provides: "If the parties are unable to agree on the ground rules of the mini-trial, either party may make a demand in writing for arbitration upon the other writing."

Plaintiff argues that this section allows for a unilateral veto that renders the mandatory language in Section IV(J)(2)(a) meaningless.  The Court disagrees.  Mediation procedures generally are non-binding and plaintiff's argument, taken to its logical conclusion, would negate all agreements to submit disputes to mediation.

Plaintiff also argues that the mini-trial provision is unenforceable because it is ancillary to an unenforceable arbitration provision.  The Missouri Uniform Arbitration Act provides that an arbitration provision in a contract is valid, enforceable, and irrevocable with the exception of those provisions in insurance contracts.[2]  § 435.350, Mo.Rev.Stat.  The McCarran-Ferguson Act ensures that conflicting federal law will not pre-empt state statutes that regulate the business of insurance. 15 U.S.C. § 1012(b).  Thus, plaintiff asserts, the Federal Arbitration Act would not be applicable to compel the parties to enter arbitration proceedings.  Plaintiff is correct that the contract contemplates mandatory arbitration.  § IV(J)(3) (any claim not resolved through the mini-trial process "shall be submitted to arbitration.")  However, the contract also recognizes that arbitration may not be available in all instances. § IV(J)(4) (any claim that is not subject to arbitration will be subject to the exclusive jurisdiction of the District Court for the Southern District of New York).  Thus, in the event that the mini-trial process is unsuccessful, the parties' agreement anticipates two other means for resolving disputes: arbitration and litigation and, in the event that arbitration is foreclosed by operation of statute, litigation will be the only avenue.  The provision of alternate forms of dispute resolution does not in any way negate the validity of the parties' agreement to participate in the mini-trial process.

---

[2]The statute also excludes arbitration provisions contained in contracts of adhesion.

Plaintiff's argument that the mini-trial will be futile does not alter the outcome. Both New York and Missouri law impose upon the parties to a contract an implied obligation of good faith and fair dealing. Plaintiff entered into this contract with the expectation of receiving the benefit of its bargain and may not seek to recover under the contract without affording defendant the same.

B.   Forum Selection Clause

Defendant moves to enforce the forum selection clause, seeking dismissal under Rule 12(b)(3) (improver venue) and Rule 12(B)(6) (failure to state a claim). Plaintiff argues that dismissal is an improper vehicle for enforcing a forum selection clause and that defendant should have sought transfer under 28 U.S.C. § 1404 (change of venue). A review of cases decided in the Eighth Circuit establishes that dismissal may be an appropriate remedy. See Servewell Plumbing, LLC v. Federal Ins. Co., 439 F.3d 786 (8th Cir. 2006) (affirming dismissal for improper venue); Rainforest Café, Inc. v. EklecCo, LLC, 340 F.3d 544, 546 (8th Cir. 2003) (same); Marano Enterprises of Kansas v. Z-Teca Restaurants, LP, 254 F.3d 753, 757-58 (8th Cir. 2001) (same) M.B. Retaurants, Inc. v. CKE Restaurants, Inc., 183 F.3d 750 (8th Cir. 1999) (same); see also Steward v. Up North Plastics, Inc., 177 F. Supp.2d 953, 957 (D. Minn. 2001) (discussing various mechanisms to enforce forum selection clause); Stacks v. Bluejay Holdings, LLC, No. 4:10CV718 (JLH), 2010 WL 3893990, at *2 (E. D. Ark. Sept. 29, 2010) (noting that "the Eighth Circuit has not expressly ruled on the issue" of whether Rule 12(b)(3) or 12(b)(6) is proper vehicle and listing cases).

There is confusion regarding whether state or federal law applies to the determination of whether a specific forum-selection clause is enforceable. See Servewell, 439 F.3d at 789 (noting that the enforcement of a forum selection clause

concerns the substantive law of contracts and procedural law of venue); but see Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 (1988) (federal law applies to motion to transfer venue in case arising under diversity jurisdiction). The Eighth Circuit has yet to adopt a definitive position on the issue, Servewell, 439 F.3d at 789, and the Court does not believe it is necessary to do so in this instance: plaintiff generally argues that the dispute should be governed by Missouri law, but Missouri has adopted the federal standard. High Life Sales Co. v. Brown-Forman Corp., 823 S.W.2d 493, 496-97 (1992). The contract includes a choice-of-law provision that designates the law of New York, which "afford[s] a somewhat broader degree of discretion regarding the enforcement of forum selection clauses." Koninklijke Philips Electronics v. Digital Works, Inc., 358 F. Supp.2d 328, 331-32 (S.D.N.Y. 2005) (internal quotation omitted). Neither party is arguing that the application of the law of either state would have a substantial effect on the outcome. The Court will follow Eighth Circuit precedent and apply the federal standard. See M.B. Restaurants, 183 F.3d at 752.

"Forum selection clauses are *prima facie* valid and are enforced unless they are unjust or unreasonable or invalid." Id. (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)). When "the forum selection clause is the fruit of an arm's-length negotiation, the party challenging the clause bears an especially heavy burden of proof to avoid its bargain." Servewell, 439 F.3d at 789.

Forum selection clauses may be set aside where "enforcement would contravene a strong public policy of the forum in which suit is brought." Id. Plaintiff argues that enforcement of the forum-selection clause would violate Missouri public policy, because insurance is an essential area of the State's responsibility. Plaintiff cites Missouri statutes as evidence that Missouri has a strong public policy in regulating insurance

that would be impaired if the forum selection clause is upheld. Section 375.158, Mo.Rev.Stat., requires insurers doing business in the State of Missouri to comply with all provisions of state law governing insurance; § 384.068.1 provides that suit may be brought against an insurer for any cause of action arising in the state; § 375.256 provides that service upon an insurer may achieved by serving the director of the state department of insurance. These sections establish only that jurisdiction over insurers is proper in Missouri; they do not establish that jurisdiction is exclusive here. Plaintiff does not cite a Missouri statute or case that establishes that enforcement of a forum selection clause would in any way undermine the State's interest in regulating insurance. And, as much as the State of Missouri has an interest in governing in regulating insurance, there is a "strong countervailing public policy in favor of holding parties to their agreement" in order to promote commerce. Servewell, 439 F.3d at 791 (quoting Omron Healthcare, Inc. v. Maclaren Exports Ltd., 28 F.3d 600, 603 (7th Cir. 1994)).

Plaintiff's appeals to the State's interest in the Taum Sauk Reservoir and the surrounding area miss the mark – the parties' dispute does not concern whether plaintiff should remediate the damage caused by the breach, for it has already undertaken the necessary restoration. Plaintiff's suggestion that enforcement of the forum-selection clause may impair the State's ability to recover for future property damage is wholly speculative. At issue is defendant's contractual obligation to reimburse plaintiff for its expenses. That contract was freely entered into between two large commercial entities operating at arm's length. Plaintiff has failed to meet its heavy burden of proof to set aside the forum selection clause in the insurance contract.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [Doc. #19] is granted.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 10th day of January, 2011.